# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL PERRY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 11-40215-TSH |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF COMMISSIONER (Docket No. 20) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER (Docket No. 24)
### September 30, 2014

**HILLMAN, District Judge**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("SSA") (the "Commissioner") denying Michael Perry's ("Plaintiff") application for Social Security Disability Insurance Benefits ("DIB"). Plaintiff filed a motion seeking an order reversing the decision of the Commissioner (Docket No. 20), and the Commissioner filed a cross-motion seeking an order affirming the decision of the Commissioner (Docket No. 24). For the reasons set forth below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## Procedural History

Plaintiff filed applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits on June 15, 2009, claiming he became a disabled

individual as of June 30, 2008. The Social Security Administration ("SSA") denied this application on December 31, 2009, and again upon reconsideration on April 30, 2010. Plaintiff filed a timely Request for Hearing by Administrative Law Judge on May 12, 2010. The requested hearing was held in Boston, Massachusetts on April 1, 2011 before the Honorable Rebekah Ross. Plaintiff's was denied and the decision issued on April 29, 2011. The case was transferred from the Decision Review Board to the Appeals Council, who denied the request for review. After the Plaintiff had exhausted all administrative reviews, a civil action was commenced per 42 U.S.C. § 405(g).

Facts

*Personal and Employment History*

Plaintiff was born in Massachusetts in 1986, making him 22 years old on his age of alleged onset of disability, June 30, 2008. Plaintiff received an IEP during his school years for a learning disability, and because of his inability to pass the Massachusetts Comprehensive Assessment System ("MCAS") test, required testing for all public school students in Massachusetts, Plaintiff received a special certificate of attainment in lieu of a high school diploma at the culmination of his schooling. Plaintiff currently resides in Southboro, Massachusetts with his mother and step-father.

The Plaintiff held various short-term jobs following high school, including retail positions at Guitar Center, which he remained at for six months, and Spencer Gifts, and seasonal employment over the course of several years at several Halloween specialty stores.

*Medical History*

From January 6, 2006 through August 22, 2006, Plaintiff sought treatment at the Boston Medical Center (R. 134-145). Plaintiff complained of a tremor in both hands, which occurred during activities, such as writing or using tools (R. 136). He denied a tremor at rest (R. 136). Upon physical examination, Plaintiff was found to have a postural tremor in both the right and

left hand (R. 138), but he denied joint pain, muscle cramps, muscle weakness, stiffness, or arthritis (R. 137, 143). Plaintiff was also noted to have a history of bipolar disorder and ADHD (R. 136), but no abnormalities were found upon mental status exam (R. 137).

Beginning on April 13, 2005, Plaintiff visited the Massachusetts General Hospital, where he was treated by Dr. Jefferson Prince (R. 146-172, 349-368). Mental status exams revealed that Plaintiff was alert and oriented times three, with intact cognition, a logical thought process, and appropriate thought content (R. 147-148, 150). He showed no signs or symptoms of depression, mania, or psychosis (R. 147, 150-152). Throughout his treatment, Dr. Prince reported that Plaintiff had a stable mood (R. 147-148, 152-154); was "feeling pretty upbeat" (R. 147); and was doing well (R. 148, 150-154). Plaintiff informed Dr. Prince that he noticed a difference with medication (R. 147).

From June 9, 2010 through November 9, 2010, Plaintiff sought therapy at SMOC Behavioral Center (R. 304-315). Plaintiff was found to have mood swings (R. 311), but upon mental status exam, Plaintiff's thought content, thought process, intellectual functioning, orientation, memory, insight, and judgment were within normal limits (R. 310). He was assigned a Global Assessment Functioning ("GAF") score of 51 (R. 312).[1]

In January 2011, Marcos Rosenbaum, MSW, Plaintiff's therapist, completed a medical report for purposes of Plaintiff's application for Massachusetts state disability benefits, which was co-signed by Dr. Prince (R. 316-326). In the report, it was noted that Plaintiff had difficulties with concentration and in following directions (R. 324). The report further noted that Plaintiff indicated that he had a history of being unable to sustain a job (R. 322). In a

---

[1] The GAF scale evaluates an individual's psychological, social, and occupational functioning on a scale of 0-100. American Psychiatric Ass'n., Diagnostic and Statistic Manual of Mental Disorders 34 (4th ed. TR 2000)("DSM-IV-TR"). Scores of 51 to 60 indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* at 34.

supplemental report, Mr. Rosenbaum stated that Plaintiff had lost jobs on more than one occasion because he had trouble retaining assignments and following orders, and was easily distracted (R. 334). Mr. Rosenbaum also noted that Plaintiff's mental health problems made it difficult for him to remember things or go to the doctor on his own, but he noted no problems in his ability to sit, stand, walk, bend, reach, and lift (R. 332).

On December 30, 2009, Dr. Arlene Reed-Delaney, a non-examining state agency medical consultant, completed a Psychiatric Review Technique Form and a mental RFC assessment based on a review of the record (R. 174-191). Dr. Reed-Delaney noted that Plaintiff had bipolar disorder and a history of ADHD (R. 176, 179, 181). According to Dr. Reed-Delaney, Plaintiff had no limitations with respect to activities of daily living; was mildly limited in maintaining social functioning; was moderately limited in maintaining concentration, persistence, or pace; and had no episodes of decompensation (R. 188). Dr. Reed-Delaney opined that Plaintiff was able to manage simple tasks; concentrate for two-hour periods within a 40-hour work week; manage appropriate, superficial social interactions; and adapt to minor stressors (R. 176). On April 4, 2010, Dr. Mary Ellen Menken, a non-examining state agency medical consultant, affirmed Dr. Reed-Delaney's findings (R. 194).

On April 29, 2010, Dr. Harris Faigel, a non-examining state agency physician, opined, based on a review of the record evidence, that Plaintiff did not have a severe medically determinable physical impairment (R. 195). Dr. Faigel noted that Plaintiff had a functional hand tremor that was managed with propranolol (R. 195). According to Dr. Haigel, Plaintiff's tremor was sufficiently controlled; he could play the drums without difficulty (R. 195).

*The ALJ's Findings*

The ALJ evaluated Plaintiff's claim in accordance with the five-step sequential evaluation process for evaluating disability claims (R. 22-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2008, his alleged onset date (R. 22). At step two, the ALJ found that Plaintiff had severe impairments of a bipolar disorder; a learning disability; and attention deficit hyperactivity disorder ("ADHD") and found that his hand tremor was non-severe (R. 22). At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 23). The ALJ then found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but was limited to low stress work, defined as unskilled work with simple, repetitive tasks; rare changes in the work setting; and rare judgment or decision-making (R. 25). The ALJ further found that Plaintiff should have no interaction with the general public and only occasional, superficial interaction with coworkers, and was restricted to work that mostly dealt with things rather than people (R. 25). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work (R. 27). Finally, at step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy (R. 27). Accordingly, the ALJ found that Plaintiff was not disabled from June 30, 2008, his alleged onset date, through April 29, 2011, the date of the ALJ's decision (R. 28).

## *Discussion*

### *Standard of Review*

Review by this Court is limited to whether the Commissioner's findings are supported by substantial evidence and whether the correct legal standards were applied. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When applying the substantial evidence standard, the court must bear in mind that it is the province of the Commissioner to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts about the evidence. *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal of an ALJ's decision by this court is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Comm'r of Social Security*, 114 Fed. App'x 410, 411 (1st Cir. 2004); *see also Manso--Pizzaro*, 76 F.3d at 16. If the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

<u>Whether Substantial Evidence Supports the ALJ's Finding That
Plaintiff's Hand Tremor Was a Non-Severe Impairment</u>

At step two, the ALJ found that Plaintiff's hand tremor did not rise to the level of a severe impairment (R. 22). Plaintiff argues that in making this finding, the ALJ impermissibly rendered a lay medical opinion. The Commissioner contends that substantial evidence supports the ALJ's finding in step two that that Plaintiff's hand tremor did not affect his ability to perform basic work and leisure activities and, therefore, was not a severe impairment. Further, the Commissioner argues that the ALJ relied on medical evidence in the record, and not on her own lay opinion in doing so.

Here, any error at step two was harmless because the evaluation proceeded past step two and the ALJ considered all of Plaintiff's impairments at step four. *Noel v. Astrue*, 2012 WL 2862141 (D. Mass. 2012) ("Even if the ALJ did err in his finding that Plaintiff's anxiety was not

6

a severe impairment, that error was harmless.") Because the ALJ found that Plaintiff had at least one severe impairment, the ALJ took into consideration all of Plaintiff's impairments, both severe and non-severe, when assessing his RFC. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003) (Because the ALJ found that Plaintiff had a severe impairment, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

The ALJ clearly considered Plaintiff's hand tremor issues when assessing her RFC. In the ALJ's discussion leading to her RFC determination, the ALJ noted that Plaintiff's reported hand tremor appeared to be under control during the hearing (R. 22). The ALJ noted that Plaintiff is able to care for himself, clean his room, do laundry and take care of his pets. The ALJ further noted that Plaintiff was able to shop in a store, play the drums and play basketball. The RFC takes these issues into account. "In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be consistent with the objective medical evidence." (R. 25). Thus, the ALJ considered all of Plaintiff's limitations, severe and non-severe, in reaching her RFC determination.

Plaintiff further argues that in making this finding, the ALJ improperly rendered a medical opinion based on her lay observation. Plaintiff notes that the medical record shows he has an "essential tremor," which is not present at rest, but only appears during certain activities, such as handwriting, using tools, or other fine-motor tasks. Plaintiff argues that since he was at rest during the hearing, his hand tremor would not have been visibly apparent. However, an ALJ may use his or her own observations of the claimant "as part of the overall evaluation of the credibility of the claimant's statements." SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

7

Moreover, Dr. Faigel, a non-examining state agency physician who reviewed the medical record and whose findings the ALJ considered (R. 23), opined, on April 29, 2010, that Plaintiff had a functional hand tremor, which was sufficiently managed with propranolol. *See Belanger v. Apfel*, 113 F. Supp. 2d 191, 196 (D. Mass. 2000) ("'[i]mplicit in a finding of disability is a determination that existing treatment alternatives would not restore a claimant's ability to work.'") (quoting *Tsarelka v. Sec'y of Health & Human Servs.*, 842 F.2d 529, 534 (1st Cir. 1988)). According to Dr. Faigel, Plaintiff's hand tremor was a non-severe impairment.

The ALJ properly relied on Dr. Faigel's opinion in finding that Plaintiff's hand tremor was not a severe impairment.[2] *See Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 430-431 (1st Cir. 1991) (affirming ALJ's reliance on the reports of non-examining physicians in concluding that plaintiff was not disabled); *Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 13 (1st Cir. 1982) (assessments of non-examining physician constituted substantial evidence in support of ALJ's decision). It is true that "[w]ith few exceptions ... an ALJ, as a lay person, is not qualified to interpret raw data in a medical record". *Manso–Pizarro*, 76 F.3d at 17. At the same time, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." *Id.* Additionally, the ALJ has the discretionary power to discount medical opinions that are inconsistent with the majority of medical evidence in the record. *Keating v. Sec'y of Health and Human Servs.,* 848 F.2d 271, 276 (1st Cir.1988); *see also, Haidas v. Astrue,* 2010 WL 1408618 (D.Mass. Mar.31, 2010) (citing *Morales v. Comm'r of Soc. Sec.,* 2 Fed. App'x 34, 36 (1st Cir. 2001)).

---

[2] The record contains no medical opinion refuting Dr. Faigel's opinion, or indicating that Plaintiff experienced significant work-related limitations with respect to the use of his hands. In fact, in his report, Mr. Rosenbaum, Plaintiff's therapist, stated that Plaintiff had a tremor in both hands, but he noted no problems in his ability to use his hands, lift, or reach.

*Whether Substantial Evidence Supports the ALJ's RFC Assessment*

Plaintiff argues that in making her mental RFC finding[3], the ALJ rendered an impermissible lay opinion. Plaintiff also contends that the ALJ erroneously found that he could perform low-stress or unskilled work, despite a finding of moderate limitations in maintaining concentration, persistence, or pace. The Commissioner argues that the ALJ's RFC assessment with regard to Plaintiff's mental limitations is supported by substantial evidence.

Plaintiff argues that the ALJ did not cite to a medical opinion in finding that although he experienced moderate limitations in maintaining concentration, persistence, or pace, he was able to perform unskilled work (R. 26-27). However, Dr. Reed-Delaney, a non-examining state agency medical consultant who reviewed the record, opined on December 30, 2009, that although Plaintiff experienced moderate limitations in maintaining concentration, persistence, or pace, he was able to manage simple tasks; concentrate for two-hour periods in a 40-hour workweek; manage appropriate superficial interactions; and adapt to minor stressors (Tr. 176). On April 19, 2010, Dr. Menken, a non-examining state agency medical consultant who reviewed the record, affirmed Dr. Reed-Delaney's opinion. Although the ALJ did not explicitly discuss the findings of Dr. Reed-Delaney and Dr. Menken, she stated that he considered the opinions of the state agency medical consultants (R. 23). It is within the Commissioner's province to accord greater weight to the report or testimony of a medical expert commissioned by the Commissioner. *Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275, n.1 (1st Cir. 1988).

---

[3] RFC is an assessment of a claimant's ability to perform sustained work-related physical and mental activities, in a work setting, on a regular and continuing basis, despite impairments and related symptoms. See 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996). Plaintiff bears the burden of providing evidence establishing the degree to which his impairments limit his RFC. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The determination of a claimant's RFC is an administrative decision that is reserved for the Commissioner and is to be based on all relevant evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1), 416.927(d)(2), 416.945(a)(1); SSRs 96-5p, 1996 WL 374183, at *2 (July 2, 1996), 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

A finding of moderate limitations in maintaining concentration, persistence, or pace, does not necessarily preclude the performance of unskilled work. *See Falcon-Cartagena v. Comm'r of Soc. Sec.*, 21 Fed. Appx. 11, 14, 2001 WL 1263658, at *2 (1st Cir. Oct. 11, 2001) (noting that moderate limitations in areas of mental functioning only marginally affect occupational base for unskilled work); *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 527 (1st Cir. 1989) (upholding ALJ's reliance on the Grid in evaluating "moderate" limitations as to attention and concentration); *Viveiros v. Astrue*, No. 06-419T, 2009 WL 196217, at *7 (D.R.I. Jan. 23, 2009) (stating that "the Court is unpersuaded that the moderate and mild mental limitations Plaintiff cites would significantly impact the number of unskilled jobs the VE identified"). Moreover, in making an RFC finding, an ALJ is entitled to "piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea...that there must always be some super-evaluator, a single physician who gives the fact finder an overview of the entire case–is unsupported by the statutory scheme.").

Here, in making her RFC determination, the ALJ properly considered, in addition to the opinions from the state agency medical consultants, findings from Plaintiff's treating physician, Dr. Prince (R. 26). According to Dr. Prince's treatment notes, Plaintiff was doing well, with a stable and bright mood (Id.). Plaintiff informed Dr. Prince that medication was "very helpful" in reducing his symptoms of anxiety and panic. As the ALJ noted, on January 15, 2008, Dr. Prince reported that Plaintiff had a job selling guitars. The ALJ's RFC finding is further supported by the objective medical evidence, which the ALJ considered (R. 25-26). The ALJ noted that although Plaintiff alleged that he was unable to work due to a bipolar disorder, a learning disorder, and ADHD, according to treatment notes from the Massachusetts General Hospital,

upon examination Plaintiff was alert and oriented, with a stable mood. Examinations also revealed that his cognition was intact.

Plaintiff also argues that the ALJ failed to provide a complete hypothetical to the VE. An ALJ is permitted, however, to rely on the testimony of a VE provided that the VE's testimony is in response to a hypothetical that accurately reflects the claimant's limitations. See *Groulx v. Apfel*, No. Civ. 98-692-B, 2000 WL 1466152, at *6 (D.N.H. Jan. 4, 2000); *Berrios Lopez*, 951 F.2d at 429; *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). Here, the ALJ's hypothetical to the VE contained all of the limitations set forth in the ALJ's RFC finding, which were supported by substantial record evidence (R. 25).

In crafting an RFC finding, the ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista*, 826 F.2d at 144. Here, in making her RFC assessment, the ALJ considered the objective medical evidence, findings from examining and treating sources, and the medical opinions. Substantial evidence, therefore, supports her RFC finding.

<u>*Whether the ALJ's Made a Proper Credibility Determination*</u>

Plaintiff argues that the ALJ did not properly evaluate the credibility of his subjective complaints of disabling symptoms. The Commissioner contends that the ALJ properly assessed Plaintiff's credibility in accordance with the applicable regulations and Social Security Rulings and that substantial evidence supports the ALJ's credibility finding.

Credibility determinations are made by the ALJ and are ordinarily entitled to deference. *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). An ALJ makes a proper credibility determination when such a determination is "supported by substantial evidence and the ALJ ... makes[s] specific findings as to the relevant evidence [s]he considered

in determining to disbelieve the applicant." *Da Rosa v. Sec'y of Health & Human Servs.,* 803 F.2d 24, 26 (1st Cir. 1986). "The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). If the ALJ finds that a claimant's allegations of disability are not credible, the ALJ must gather "detailed descriptions of claimant's daily activities, functional restrictions, medication and other treatment for pain, frequency and duration of pain, and precipitating and aggravating factors." *Baez Velez v. Sec'y of Health & Human Servs.,* 993 F.2d 1530, 1993 WL 177139 at *6 (1st Cir.1993). Known as the "Avery factors," these descriptions must be carefully considered by the ALJ before she declares the claimant not to be credible. *See Avery v. Sec'y of Health & Human Servs.,* 797 F.2d 19, 23 (1st Cir.1986); WL 374186, at *3 (July 2, 1996).

The transcript from the oral hearing clearly shows the ALJ asking the Plaintiff about his daily activities, the severity of his pain, what medication he takes, his functional limitations, and factors which aggravate his symptoms. Relying upon the resulting testimony, the ALJ reasonably found, based on the record evidence, that Plaintiff's allegations of disabling symptoms were not fully credible (R. 25-27). To explain why Plaintiff was not credible, the ALJ cited the Plaintiff's daily activities of giving caring for himself, cleaning when asked, doing his laundry, caring for pets, and shopping. She also referenced the Plaintiff's statements of doing well at his jobs when discussing them with therapists or physicians, which contradicted his testimony, as well as testimony that he plays music and basketball with friends, but when asked by his lawyer, claimed to only have a single friend. These are cited as factors undermining his credibility. (R. 25)

12

A reasonable mind could adopt the ALJ's credibility determination based on the evidence presented. A reasonable person could conclude that an individual who can drive a car, play the drums, play basketball, play video games, grocery shop, sometimes assist with the housework and take care of the family pets, can reasonably be expected to perform the limited type of light work outlined in the ALJ's determination of Plaintiff's residual functioning capacity. The fact that the evidence could possibly lead to an alternative conclusion is not sufficient to warrant reversal. *See Evangelista*, 826 F.2d at 144; *see also Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) citing *Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981) (noting that resolution of conflicts in the evidence is for the Social Security Administration, and that courts must affirm the administrations conclusions even if the record could arguably support an alternative conclusion).

Because a reasonable person could examine the evidence and agree with the ALJ's credibility findings, these findings are supported by "substantial evidence." *See Evangelista*, 826 F.2d at 144. Accordingly, I find the ALJ's credibility determination to be supported by substantial evidence and entitled to deference by this court.

**Conclusion**

For the foregoing reasons the Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket No. 20) is ***denied***, and the Defendant's Motion to Affirm the Commissioner's Decision (Docket No. 24) is ***granted***.

SO ORDERED.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE